*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

Submitted August 5, affirmed November 23, 2022, petition for review denied March 30, 2023 (370 Or 828)

MARK JAMES WILSON,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A174549

Mark James Wilson filed the brief *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Egan, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision that set petitioner's prison term at 474 months, raising three assignments of error. We affirm.

Under ORS 183.482(8)(a), we review the board's order "to determine whether the board erroneously interpreted a provision of law" and whether "a correct interpretation compels a particular action." *Baker v. Board of Parole*, 305 Or App 814, 815, 473 P3d 83, *rev den*, 367 Or 290 (2020) (brackets and internal quotation marks omitted). "When determining whether the board correctly interpreted its own rule, we defer to the board's interpretation, so long as its interpretation is not inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law." *Id.* (brackets and internal quotation marks omitted). Further, we review the agency's exercise of discretion only to determine whether it was "[o]utside the range of discretion delegated to the agency by law," ORS 183.482(8)(b)(A), "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice," ORS 183.482(8)(b)(B), or "[o]therwise in violation of a constitutional or statutory provision," ORS 183.482(8)(b)(C). Finally, under ORS 183.482(8)(c), we will set aside the final order if it is unsupported by substantial evidence in the record.

Petitioner was convicted of aggravated murder, ORS 163.095 (1987), based on conduct that he undertook in 1987, and he was sentenced to life imprisonment with a 30-year minimum, pursuant to ORS 163.105 (1987). In 2019, the board found that petitioner was likely to be rehabilitated within a reasonable period of time and, accordingly, changed the terms of his confinement to life imprisonment with the possibility of release to parole pursuant to ORS 163.105 (1987). The board was then obligated to set a release date for petitioner in accordance with the "parole matrix" in place in 1987, when petitioner committed his offense. *Janowski/Fleming v. Board of Parole*, 349 Or 432, 453, 245 P3d 1270 (2010) ("[W]e conclude that the legislature intended the board, having converted the terms of a

prisoner's confinement to life in prison with the possibility of parole, to set a release date in accordance with the parole matrix in place when the prisoner committed his offense.").

To set a release date using the parole matrix in place at the time petitioner committed his offense, the board was required to designate both an "offense severity rating" (based on the offense petitioner committed) and a "risk assessment score." *See, e.g.*, OAR ch 255, Ex C (1985).

In 1987, at the time petitioner committed his offense, the board's rules designated both aggravated murder, ORS 163.095, and regular murder, ORS 163.115, as offenses with an offense severity rating of "7." OAR ch 255, Ex A (1985). For offenses with a severity rating of 7—such as petitioner's offense—in order to set a prison release date using the parole matrix, the board was further required to determine whether the offense fell within "subcategory 1" or "subcategory 2." OAR ch 255, Ex C (1985).

Exhibit A, Part II, of the board's rules had a method of determining whether a conviction for "murder," ORS 163.115, fell into subcategory 1 or subcategory 2. But, as relevant to this case, there was no expressly designated method for determining whether a conviction for "aggravated murder," ORS 163.095, fell into subcategory 1 or subcategory 2. OAR ch 255, Ex A, Part II (1985). For convictions for "murder," a murder was subcategory 1 if it met certain criteria, *viz.*, "stranger to stranger; cruelty to victim; prior conviction for murder or manslaughter; evidence of significant planning or preparation." A murder was in subcategory 2 if it did not include those specified criteria. Here, the board rated petitioner's crime severity as 7, subcategory 1, by looking to applicable subcategories for "murder," ORS 163.115, when petitioner had not been convicted of murder, but had been convicted of "aggravated murder," ORS 163.095.

PETITIONER'S FIRST ASSIGNMENT OF ERROR

In his first assignment of error, petitioner contends that it was error to apply "Murder (ORS 163.115) subcategory classifications to Petitioner's Aggravated Murder (ORS 163.105) conviction." In petitioner's view, doing so

"misinterprets and misapplies provisions of law, violates applicable rules and is *ad hoc*, arbitrary and capricious."

We disagree. In 1987, the board was required to have rules in effect for assigning a parole matrix range for aggravated murder, and its rules did designate an offense severity rating for aggravated murder—a rating which mirrored the offense severity rating for regular murder. As noted, the offense severity rating for aggravated murder (*i.e.*, a severity rating of 7) required the designation of a subcategory, suggesting that some rule for determining the subcategory for aggravated murder was intended to be applicable, and "murder" is the closest analog to "aggravated murder." Moreover, the conduct which placed a particular murder into "subcategory 1" under the criteria for murder on Exhibit A, Part II, included an individual having a "prior conviction for murder," which, by definition, is conduct constituting aggravated murder. ORS 163.095 (1987) (defining aggravated murder to include a murder committed after the defendant had been "convicted previously in any jurisdiction of any homicide, the elements of which constitute the crime of murder as defined in ORS 163.115"). Finally, murder, ORS 163.105 (1987), was a lesser-included offense of aggravated murder, ORS 163.095 (1987), such that a person who committed an "aggravated murder" had also necessarily committed a murder. *See* ORS 163.095 (1987) (defining "aggravated murder" as "murder as defined in ORS 163.115, which is committed under or accompanied by" certain specified circumstances). For those reasons, we conclude that the board did not commit legal error in using the subcategories that it had designated for "murder," ORS 163.115, to assign a subcategory for petitioner's "aggravated murder."

Petitioner also argues that the board's "retrospective application of 1988 Aggravated Murder (ORS 163.105) subcategories or a new, 2020, interpretation of 1985 Murder (ORS 163.115) subcategories to Petitioner's 1987 Aggravated Murder conviction violates state and federal *ex post facto* prohibitions," and that the board's application of the "'stranger to stranger' subcategory rationale to Petitioner's Aggravated Murder conviction misinterprets & misapplies the law and violates state and federal *ex post facto* prohibitions." We have considered and reject those arguments.

### PETITIONER'S SECOND ASSIGNMENT OF ERROR

In his second assignment of error, petitioner contends that the board's "decision violates rules and constitutional provisions." More specifically, petitioner contends the board applied "Item D in a way that violates Article I, section 16, of the Oregon Constitution and the Eighth and Fourteenth Amendments to the United States Constitution." Item D provides for various scores to be assigned to persons "26 or older" or "21 to under 26" based on their criminal histories in determining a risk assessment score. OAR ch 255, Ex B, Part I (1985). In petitioner's view, the board improperly "chose to apply the subordinate law (Item D), rather than the superior law (the Oregon and United States Constitutions)."

We conclude that the board did not err and that application of Item D to petitioner—who was over 18 at the time he committed his offenses—did not violate Article I, section 16, of the Oregon Constitution and the Eighth and Fourteenth Amendments to the United States Constitution. *See State v. Link*, 367 Or 625, 659, 482 P3d 28 (2021) ("[W]e conclude that the *Miller* [*v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012),] individualized-sentencing requirement applies only when imposing a sentence of life without parole on juvenile offenders.").

### PEITIONER'S THIRD ASSIGNMENT OF ERROR

In his third assignment of error, petitioner contends that "the Board's rejection of mitigation under Item M violates rules, statutes and constitutional provisions." We conclude that the board did not abuse its discretion when it declined to set a shorter prison term for petitioner based on Item M.

Affirmed.